UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America, : Case No. 1:07-CR-016
:
    Plaintiff, :
:
vs. :
:
Deon Jackson, :
:
    Defendant. :

**ORDER**

This case is again before this Court pursuant to the mandate of the Sixth Circuit Court of Appeals. (Doc. 104)

The parties and the Court are well-acquainted with the facts and history of this case. Briefly summarized, Jackson was arrested during an incident that occurred in the evening of November 16, 2006. Jackson was driving his fiance, Yolanda Ward's car which had only one operative headlight. Yolanda's daughter Tequesha, who was then 16 years old, was riding with Jackson. They were in the process of moving from one home to another. Springfield Township police Officer Heimpold, accompanied by DEA Agent Miller (who was riding along with Officer Heimpold that evening) stopped Jackson because of the headlight problem. A license plate check revealed a traffic capias against the vehicle (which it was later discovered was incurred by Yolanda's older daughter). Jackson correctly identified himself to Officer Heimpold and said he did not have

-1-

his driver's license with him. A check on his license revealed that it had been suspended; Officer Heimpold informed Jackson of this and asked Jackson to get out of the car.

Jackson complied, got into the back seat of the patrol car, and was not handcuffed. Officer Heimpold testified he told Jackson that he was under arrest for driving on a suspended license. He also testified that he had a choice to either cite Jackson for a court hearing and let him go, or to detain him and take him to jail. The choice was within the Officer's discretion, and depended in large measure on the level of Jackson's cooperation.

Yolanda Ward, the car's registered owner, was nearby at the time and approached the car. She asked several times what the problem was, and told the officers that Tequesha was her daughter. Officer Heimpold told her several times to stay back, and she finally complied. After Officer Heimpold spoke with Tequesha, she was released to go with Yolanda. Officer Heimpold then asked Agent Miller to do an inventory search of the car. Miller got into the car, opened the glove box, and saw a handgun. Miller signaled to Heimpold that he had found a gun. Officer Heimpold (accompanied by Agent Miller and Sgt. Hughes, Heimpold's supervisor who had by then arrived at the scene of the stop) then placed Jackson in handcuffs and read Jackson his Miranda rights. Jackson remained in the patrol car. Jackson eventually told the

officers that he found the gun on the floor of a bar where he was working at the time.

The grand jury subsequently indicted Jackson under 18 U.S.C. §§922(g)(1) and 924(a)(2) (felon in possession of a firearm), and 18 U.S.C. §§922(k) and 924(a)(1)(B) (possessing a firearm with an obliterated serial number). Jackson filed a pre-trial motion to suppress, contending that the gun and his post-arrest statements to the officers were obtained in violation of the Fourth Amendment. The Government responded that the vehicle stop and Jackson's subsequent arrest were lawful, and that the inventory search of the car therefore did not violate Jackson's rights. After an evidentiary hearing, at which Officer Heimpold, Agent Miller, Sgt. Hughes, and Tequesha and Yolanda Ward all testified and were cross-examined, this Court denied Jackson's motion. In its written order, the Court reviewed the hearing testimony and the parties' contentions and concluded that Agent Miller's search of the car was not a valid inventory search:

> In this case, Agent Miller's search of the car was not a lawful inventory search. Although Officer Heimpold testified that it was the policy of the Springfield Police Township Department to impound cars involved in driving under suspension violations, and to conduct inventory searches of those cars, there was no evidence concerning the parameters or criteria under which inventory searches are to be conducted. Thus, as was the case in Wells,[1] the government failed to demonstrate that the search of the car was sufficiently regulated to satisfy the Fourth Amendment. In

---

[1] Florida v. Wells, 495 U.S. 1 (1990).

> addition, assuming for the moment that such criteria do exist, the evidence adduced at the hearing showed that Agent Miller was unfamiliar with the Springfield Township Police Department's inventory search procedures.

Doc. 32, April 30, 2007 Order at p. 7. However, the Court then found that the search of the car was a permissible warrantless search pursuant to a lawful custodial arrest, under New York v. Belton, 453 U.S. 454, 460 (1981) and its progeny.

Jackson proceeded to trial, and the jury was unable to reach a verdict. After the Court declared a mistrial, a second trial began on August 13, 2007. After three days of trial, the second jury found Jackson guilty. He was sentenced on April 25, 2008.

While Jackson's appeal was pending, the United States Supreme Court decided Arizona v. Gant, 556 U.S. ___, 129 S.Ct. 1710 (April 21, 2009). Gant rejected the broad interpretation of New York v. Belton that had been applied in many subsequent cases. The Supreme Court held that a warrantless vehicle search incident to a recent occupant's arrest is permissible "... only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." Gant, 129 S.Ct. at 1719. A warrantless search is also permissible when it is reasonable to believe that evidence relevant to the crime of arrest might be found in the vehicle.

Applying Gant to Jackson's case, the Sixth Circuit found that the search of the vehicle was unlawful. It was undisputed

-4-

that Jackson was in the back seat of the police car at the time Agent Miller searched the vehicle, and there was no reason to believe that the vehicle might have contained evidence relevant to Jackson's suspended license. The Sixth Circuit vacated the judgment against Jackson, and remanded the case to this Court "for proceedings consistent with" the opinion.

The Government has now moved for reconsideration of the motion to suppress, or to reopen that motion hearing to permit the Government to present additional testimony in opposition to Jackson's motion. (Doc. 107) The Government contends that the gun would have inevitably been discovered by the police in a subsequent inventory search of the vehicle after it had been towed. The Government alternatively requests the Court to reopen the evidentiary hearing and permit the Government to present additional testimony and evidence on this issue.

Jackson opposes the Government's motion. (Doc. 108) He argues that when Gant was decided, the Sixth Circuit granted the Government permission to file a substitute appellee's brief, which argued that the inevitable discovery doctrine was an alternate ground upon which this Court's judgment should be affirmed. The Government also requested the Court of Appeals to instruct this Court on remand to reconsider the suppression issue, or to conduct an additional hearing. The Sixth Circuit implicitly rejected both of these arguments in concluding that

-5-

the vehicle search violated Jackson's constitutional rights. Jackson contends that the law of the case doctrine and the Sixth Circuit's mandate prohibit re-opening an issue that this Court and the Court of Appeals have already decided.

The issue of whether the firearm in question would have inevitably been discovered, even if Agent Miller had not searched the vehicle at the scene of the traffic stop, was squarely presented by the proceedings on Jackson's suppression motion. Officer Heimpold testified at the suppression hearing that it is standard Springfield Township practice to tow all cars when the driver is found to be driving under suspension. But the Government presented no testimony or evidence at the suppression hearing concerning the procedures utilized in any inventory searches conducted on any towed cars. This Court's order denying Jackson's suppression motion specifically noted that "the purpose of requiring established criteria for conducting an inventory search is to prevent the police from using an inventory search as a pretext to conduct a search for evidence of criminal activity," citing Colorado v. Bertine,,479 U.S. 367, 375-376 (1987). That observation applies with equal force to any inventory search that might have been conducted later on a towed vehicle. While this Court's order did not explicitly reject an inevitable discovery rationale as a basis to justify Agent Miller's search of the vehicle, the Court in fact rejected that theory when it concluded

that the on-scene search was an unlawful inventory search.

The Sixth Circuit has stated that "the inevitable discovery exception to the exclusionary rule applies when the government can demonstrate *either* the existence of an independent, untainted investigation that inevitably would have uncovered the same evidence *or* other compelling facts establishing that the disputed evidence inevitably would have been discovered." <u>United States v. Kennedy</u>, 61 F.3d 494, 499 (6th Cir. 1995) (emphasis in original). Application of the inevitable discovery doctrine "requires the district court to determine, viewing affairs as they existed at the instant before the unlawful search, what would have happened had the unlawful search never occurred." <u>Id</u>. at 498 (quoting <u>United States v. Eng</u>, 971 F.2d 854, 861 (2d Cir 1992)). The Government has the burden of proof to establish the applicability of this doctrine.

There is no suggestion that any independent investigation concerning Jackson existed at the time. And viewing affairs as they existed at the instant before Agent Miller's on-the-scene search (which the Government now concedes was not a lawful inventory search), this Court cannot conclude that the facts are so compelling that the Court should conclude that the firearm would have inevitably been discovered. The testimony of the witnesses at the suppression hearing made it very clear to the Court that the discovery of the firearm during the on-the-scene

-7-

search completely altered the situation, and the approach to Jackson taken by the officers. Jackson was cooperative, did not try to conceal his identity, and he was not handcuffed. Officer Heimpold had not decided whether to simply cite him for the license violation, or to take him into custody. Tequesha had been released to go with her mother, and Yolanda Ward – while perhaps understandably upset at coming upon the scene – complied with the officers' demands and posed no threat to them. She was also the registered owner of the vehicle. The brief testimony that was offered during the suppression hearing regarding the Township's tow policy, and the lack of evidence concerning any documented, standardized, and regularly-followed inventory search procedures, did not satisfy the Government's burden of proof. And to permit the Government to bolster its arguments at this stage by submitting additional testimony or evidence would be patently unfair. The Court has no doubt that the Sixth Circuit would have instructed this Court on remand to reopen those proceedings in order to reconsider this issue, if the Sixth Circuit believed the issue had been decided improperly. Its decision not to do so is further support for this Court's conclusion.

This Court recognizes that it has the power to revisit any issue that was already decided in this case. Jackson cites United States v. Moored, 38 F.3d 1419, 1421 (6th Cir. 1994),

which identified appropriate circumstances under which the Court could or should reconsider an already-decided issue.  One such circumstance is "a clearly erroneous decision which would work a manifest injustice."  The Court cannot conclude that its prior decision that the on-the-scene search was an unlawful inventory search on any basis, including inevitable discovery, was clearly erroneous, or that permitting that decision to stand would work a manifest injustice in this case.

For all of these reasons the Government's motion to reconsider or reopen the motion to suppress is denied.  Pursuant to the Sixth Circuit's mandate, the search of the car Jackson was driving was unlawful under the Fourth Amendment, and the evidence obtained during that search, the firearm, should have been suppressed.  It inexorably follows from that conclusion that Jackson's statements to the officers about the firearm should also be suppressed.  The Court does not perceive any basis upon which the judgment against Jackson could be sustained by this Court absent the evidence of the firearm or Jackson's statements.  Therefore, the judgment entered on April 25, 2008, finding Jackson guilty and imposing a sentence upon him as a result, is hereby VACATED.

SO ORDERED.

DATED: January 11, 2010        s/Sandra S. Beckwith
                               Sandra S. Beckwith
                               Senior United States District Judge